```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                       PARKERSBURG
```

**JONATHON E. HANING,**[1]

    **Movant,**

                                   **Case No. 6:04-cv-00481**
                                   **Case No. 6:02-cr-00239-01**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending is Movant Jonathon E. Haning's (hereinafter "Defendant") Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. (Docket sheet document # 22). This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

On November 10, 2001, an officer with the Parkersburg Police Department observed Defendant drive a Ford Bronco the wrong way down a one-way street in Parkersburg, West Virginia. When the officer attempted to execute a traffic stop, Defendant fled in the vehicle. The officer pursued the vehicle. With the assistance of

---

[1] The Clerk has spelled the Movant's name as "Jonathan." A similar spelling was used in Movant's Pre-sentence Investigation Report. However, the undersigned will used the spelling in Movant's motion, which is "Jonathon."

other patrol units from the Parkersburg Police Department and the Wood County Sheriff's Department, Defendant was cornered on a dead-end street. The Bronco collided with a parked car, and Defendant then exited the car and fled on foot. Defendant was ultimately apprehended by the officers and placed under arrest. Defendant failed a field sobriety test.

During the subsequent search of Defendant's vehicle, officers discovered two firearms - a .12 gauge shotgun and a .22 caliber rifle. When Defendant was transported to the police station, he informed the officers that he had been carrying a .22 caliber revolver in the waistband of his pants, but had discarded it in the woods prior to his capture. The firearm was later recovered from the woods.

On October 23, 2002, Defendant was indicted on charges of possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2) (Count One), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Two). (# 1). On May 13, 2003, Defendant pled guilty (# 11), pursuant to a written plea agreement (# 12), to Count One of the Indictment.

According to Defendant's Presentence Investigation Report ("PSR"), his base offense level was 14, pursuant to USSG § 2K2.1(a)(6)(A). The PSR also recommended that Defendant receive a two-level enhancement because Defendant possessed three firearms

and further recommended that he receive a two-level enhancement because all of the firearms were stolen.

Finally, pursuant to USSG § 3C1.2, the PSR recommended that Defendant receive a two-level enhancement for obstruction of justice on the basis that Defendant had recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer at the time of his arrest. The report noted that Defendant had fled from police, driving his vehicle at a high rate of speed, and that the vehicle had collided with a parked car. The PSR did, however, recommend that Defendant also receive a three-level reduction for acceptance of responsibility .

Thus, Defendant's total offense level was calculated to be 17. Based upon that level, and a criminal history category of IV, Defendant's Guideline imprisonment range was 37-46 months. Defendant's appointed counsel, Federal Public Defender Mary Lou Newberger, made no objections with regard to the probation officer's recommended enhancements.

On August 7, 2003, based upon the PSR, the presiding District Judge imposed a sentence of 46 months, followed by a 3-year term of supervised release. Defendant was also ordered to pay a $100 special assessment. (# 26, Ex. A). Defendant did not take a direct appeal to the United States Court of Appeals for the Fourth Circuit.

On May 17, 2004, Defendant filed the instant section 2255 motion. (# 22). As grounds for relief, Defendant contends that the two-level enhancement for obstruction of justice was improper because no one was injured during his flight from law enforcement officers, and because no State charges were brought against him with regard to the attempted escape. (Id. at 4, Grounds One and Three). Defendant further claims that his counsel, Mary Lou Newberger, provided ineffective assistance of counsel by failing to challenge the obstruction enhancement. (Id. at 4, Ground Two).

On June 14, 2004, the United States filed a Response to Defendant's 2255 motion, contending that Defendant's claims lack merit. (# 26). Defendant filed a Reply brief on July 6, 2004. (# 27). The matter is ripe for determination.

## ANALYSIS

In Ground One of his section 2255 motion, it appears that Defendant is claiming that the two-level enhancement for "Reckless Endangerment During Flight," as set forth in USSG § 3C1.2, was improper because "[t]here were no persons injured and there were other pending charges that were not used to increase [his sentence?]." (# 22 at 4, Ground One). Defendant further states that "[t]he arresting officer F.C. Holliday [did not testify] at any Federal hearings or sentencing." (Id.) In Ground Three of the motion, it appears that Defendant is also claiming that the enhancement was improper because he had not been charged with any

4

State crime for his flight, and that it was too late for State officials to pursue such charges. (Id., Ground Three).

In response to these claims, the United States asserts:

> The commentary to the Guideline [section 3C1.2] recognizes that the enhancement is to be construed broadly and includes a risk to any person, including the pursuing police officer, during the course of the attempt to evade arrest. Significantly, nowhere in the enhancement or commentary is there any requirement of actual injury or a requirement that separate state or federal charges are to be brought in order to justify the sentencing adjustment . . . . In this case, defendant's activity, which is essentially undisputed, involved an attempt to flee from police officers that could have easily injured an innocent bystander or resulted in an injury to a police officer.

(# 26 at 5-6). Accordingly, the United States asserts that the enhancement of Defendant's sentence on this basis was appropriate, and that his counsel did not provide ineffective assistance of counsel by failing to object to the enhancement. (Id. at 6).

Because Defendant did not raise this issue on direct appeal, the court must apply the "cause and actual prejudice" standard in order to obtain collateral relief. See United States v. Frady, 456 U.S. 152, 167 (1982). Under this standard, Defendant must show both "cause" excusing his procedural default for not raising this issue in his direct appeal, and "actual prejudice" resulting from the error. Id.

The court finds it unnecessary to address the cause prong of the test because Defendant can show no actual prejudice sufficient to justify collateral relief. Based upon a review of the PSR, the

undersigned agrees that there was a basis for this enhancement. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the two-level enhancement for reckless endangerment during flight was appropriate, and that Defendant is entitled to no relief on this claim.

In Defendant's Reply brief (# 27), he raises for the first time what essentially amounts to a challenge to all of the enhancements used to calculate his sentence based upon the Supreme Court's ruling in Blakely v. Washington, 124 S. Ct. 2531 (2004), and the subsequent ruling in United States v. Booker, 125 S. Ct. 738 (2005), which applied the holding in Blakely to the United States Sentencing Guidelines.[2]

In Blakely v. Washington, 124 S. Ct. 253 (2004), the Supreme Court held that: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  The Blakely Court noted that the term "statutory maximum" as used for purposes of Apprendi means "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."

---

[2] The Booker decision is not cited in Defendant's Reply because the ruling had not been handed down at the time Defendant filed the Reply.  However, because Booker applied the ruling in Blakely to the United States Sentencing Guidelines under which Defendant was sentenced, the undersigned will address Defendant's claims under that decision.

The Blakely decision was based upon the Court's interpretation of Washington statutory law. However, because it was believed that the decision could have some impact on the Federal Sentencing Guidelines, the undersigned held Defendant's pending motions in abeyance until the Supreme Court made additional rulings.

On January 12, 2005, the Supreme Court decided United States v. Booker, 125 S. Ct. 738 (2005), which reaffirmed the Court's holding in Apprendi, applied the holding in Blakely to the Sentencing Guidelines, and held: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756. The Booker holding applies "'to all cases on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" 125 S. Ct. at 769 (quoting Griffith v. Kentucky, 479 U.S. 314, 328 (1987)).

Defendant was sentenced on August 7, 2003. His judgment became final on or about August 21, 2003, when the time for filing a direct appeal expired. Thus, Defendant's case has concluded direct review and is final. Therefore, Booker does not apply, unless the Supreme Court rules that it is to be applied retroactively to cases on collateral review.

7

Seven Circuit Courts of Appeals have ruled that <u>Booker</u> does not apply retroactively to cases on collateral review. In <u>McReynolds v. United States</u>, 397 F.3d 479, 480-81 (7th Cir.), <u>cert. denied</u>, 125 S. Ct. 2559 (2005), the Court held:

> Although the Supreme Court did not address the retroactivity question in *Booker*, its decision in *Schriro v. Summerlin*, ___ U.S. ___, 124 S. Ct. 2519, 159 L. Ed.2d 442 (2004), is all but conclusive on the point. *Summerlin* held that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed.2d 556 (2002) -- which, like *Booker*, applied *Apprendi*'s principles to a particular subject -- is not retroactive on collateral review.
>
> *Ring* held, in reliance on *Apprendi*, that a defendant is entitled to a jury trial on all aggravating factors that may lead to the imposition of capital punishment. In *Summerlin* the Court concluded that *Ring* cannot be treated as a new substantive rule -- which is to say, a rule that "alters the range of conduct or the class of persons that the law punishes." ___ U.S. ___, 124 S. Ct. at 2523. It observed that "*Ring* altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way], requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules." *Ibid.* That is no less true of *Booker* -- or for that matter *Apprendi* itself. We held in *Curtis v. United States*, 294 F.3d 841, 843 (7th Cir. 2002), that *Apprendi* does not apply retroactively on collateral review, because it "is concerned with the identity of the decisionmaker, and the quantum of evidence required for a sentence, rather than with what primary conduct is unlawful." That, too, is equally true of *Booker*. No conduct that was forbidden before *Booker* is permitted today; no maximum available sentence has been reduced.
>
> The remedial portion of *Booker* drives the point home. The Court held that the federal Sentencing Guidelines remain in force as written, although 18 U.S.C. § 3553(b)(1), which makes their application mandatory, no longer governs. District judges must continue to follow their approach *as guidelines*, with appellate review to determine whether that task has been carried out

reasonably. No primary conduct has been made lawful, and none of the many factors that affect sentences under the Sentencing Guidelines has been declared invalid. Consequently, *Booker*, like *Apprendi* and *Ring*, must be treated as a procedural decision for purposes of retroactivity analysis.

    \* \* \* The Court held in *DeStefano v. Woods*, 392 U.S. 631, and reiterated in *Summerlin*, that the choice between judges and juries as factfinders does not make such a fundamental difference; to the contrary, the Court stated in *Summerlin*, it is not clear which is more accurate. \_\_\_ U.S. at \_\_\_, 124 S. Ct. at 2525. What is more, *Booker* does not in the end move any decision from judge to jury, or change the burden of persuasion. The remedial portion of *Booker* held that decisions about sentencing facts will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application. As a practical matter, then, petitioners' sentences would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system. That is not a "watershed" change that fundamentally improves the accuracy of the criminal process. *See also Curtis*, 294 F.3d at 843-44.

    We conclude, then, that *Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005. That date, rather than June 24, 2004, on which *Blakely v. Washington*, \_\_\_ U.S. \_\_, 124 S. Ct. 2531, 159 L. Ed.2d 403 (2004, came down, is the appropriate dividing line.

In <u>Green v. United States</u>, 397 F.3d 101, 103 (2d Cir. 2005), the Second Circuit held that "neither <u>Booker</u> nor <u>Blakely</u> appl[ies] retroactively to [a] collateral challenge." In <u>Varela v. United States</u>, 400 F.3d 864, 868 (11th Cir. 2005), the Eleventh Circuit held "that <u>Booker</u>'s constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to a § 2255 on collateral review." In <u>Humphress v.</u>

9

United States, 398 F.3d 855, 863 (6th Cir. 2005), pet. for cert. filed, No. 05-5130, the Sixth Circuit ruled that:

> We see no basis for concluding that the judicial factfinding addressed in *Booker* is either less accurate or creates a greater risk of punishing conduct the law does not reach than did the judicial factfinding addressed in *Ring*. The Supreme Court has never held that a new rule of criminal procedure falls within *Teague*'s second exception. *Beard [v. Banks]*, 124 S. Ct. [2504], 2513-14 [(2004)]. We hold that *Booker*'s rule does not either.

In United States v. Price, 400 F.3d 844, 848 (10th Cir. 2005), pet. for cert. filed, No. 04-10694, the Tenth Circuit held that Blakely was a new rule of criminal procedure that was not subject to retroactive application on collateral review. In Lloyd v. United States, 407 F.3d 608, 615-16 (3d Cir. 2005), the Third Circuit held that "Booker announced a rule that is 'new' and 'procedural,' but not 'watershed;'" thus it does not apply retroactively to § 2255 motions filed in cases which were final as of January 12, 2005. In Schardt v. Payne, 414 F.3d 1025 (9th Cir. 2005), the Ninth Circuit held that Blakely did not announce a watershed rule of criminal procedure, and quoted approvingly from Price.

Based on McReynolds, Green, Varela, Humphress, Price, Rucker, Lloyd, and Schardt, the undersigned proposes that the presiding District Judge **FIND** that Movant's conviction was final before Blakely and Booker were decided, and that neither Blakely nor Booker applies retroactively on collateral review. Accordingly,

10

the undersigned proposes that the presiding District Judge **FIND** that Defendant is entitled to no relief on his challenge to the enhancements of his sentence under the <u>Blakely</u> and <u>Booker</u> decisions.

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's section 2255 motion.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder</u>

v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, Jonathon E. Haning, to counsel of record, and to Judge Goodwin.

    September 14, 2005                    /s/ Mary E. Stanley
        Date                         Mary E. Stanley
                                      United States Magistrate Judge